UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RICHARD J. ZANOLI, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 1:19-cv-12363-ADB |
| KEURIG DR. PEPPER, | * | |
| | * | |
| Defendant. | * | |
| | * | |
| | * | |

### MEMORANDUM AND ORDER ON MOTION TO DISMISS

BURROUGHS, D.J.

Plaintiff Richard J. Zanoli ("Plaintiff") initiated this action against Keurig Dr. Pepper Inc. ("Defendant") alleging discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA") and Massachusetts General Laws Chapter 151B in connection with his termination from the company. [ECF No. 1 ("Compl.")]. Currently before the Court is Defendant's motion to dismiss. [ECF No. 9]. For the reasons set forth below, Defendant's motion, [ECF No. 9], is GRANTED.

## I.      BACKGROUND

### A.      Factual Background

For purposes of this motion, the relevant facts are drawn from Plaintiff's complaint, [Compl.], and documents referred to in the complaint, and viewed in the light most favorable to Plaintiff. See Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014) (citations omitted).

Plaintiff was initially hired by Defendant as a temporary employee in 2011, and then permanently hired as a testing brewer around July 2013. [Compl. ¶¶ 7, 8]. During a merger

between Keurig and Dr. Pepper, Plaintiff was laid off from his employment and officially notified of his termination on or about October 25, 2018.  [Id. ¶¶ 9, 14, 15].  Plaintiff was sixty-three years old at the time.  [Id. ¶ 11].

Upon termination, Defendant provided Plaintiff with a proposed separation agreement and release ("Release"), which Plaintiff signed and returned to Defendant on November 27, 2018. [Compl. ¶¶ 15, 18].  The Release, which Plaintiff attached to his complaint, stated that Plaintiff's signature would indicate his assent to the following terms: (1) the "knowing and voluntary" release of the right to make any claim of discrimination under the ADEA against Defendant, (2) that he had been advised to and given the opportunity to consult with an attorney of Plaintiff's choosing prior to signing, (3) that the agreement had been entered into "without any threat, coercion, or intimidation," (4) that Plaintiff had "at least forty-five (45)" days to consider and sign the Agreement, and (5) that Plaintiff had "seven days after the date" of signature to revoke the agreement.  [ECF No. 1-3 ("Release") at 5–6].  Plaintiff accepted these terms in exchange for "severance benefits."  [Id. at 2; Compl. ¶ 35].

The Release also included a list ("List") that disclosed the job titles and ages of all employees eligible for termination under the reduction in force and indicated which of those employees had been selected for termination.  [Release at 8–15; Compl. ¶¶ 12, 15].  In addition, the List set forth the factors that were used to determine which employees would be terminated, such as "the strategy of the Company, the structure to enable the strategy, and individual performance criteria, including, but not limited to, performance reviews, skills and experience, potential in the new organization, location, and seniority."  [Release at 8].  Plaintiff disputes that these eligibility factors provided a "legitimate, non-discriminatory justification" for Defendant's decision to terminate him.  [Compl. ¶ 36].  Further, Plaintiff states that he was performing his job

at a level that met Defendant's expectations at the time of his termination, and that he was

replaced by someone of comparable qualifications who was not within a protected class.

[Id. ¶¶ 33–34].

As more fully detailed herein, Plaintiff alleges that there are several issues with the

Release including that he was not given forty-five days to consider the Release, that there was

insufficient consideration, and that he did not sign the Release "knowingly and voluntarily." [Id.

¶¶ 37, 39, 40].

### B.    Procedural Background

On February 4, 2019, Plaintiff filed a Charge of Discrimination with the Equal

Employment Opportunity Commission ("EEOC"). [ECF No. 1-4]. On March 15, 2019, the

Massachusetts Commission Against Discrimination ("MCAD") acknowledged receipt of a copy

of Plaintiff's claim and informed him that the processing and investigation of the claim would be

conducted by the EEOC, but that Plaintiff retained his right to file a complaint in court pursuant

to Massachusetts General Laws Chapter 151B. [ECF No. 1-5]. Initially, the EEOC notified

Plaintiff that he had established a prima facie case for age discrimination under the ADEA

because he was a member of a protected class at the time of his termination based on his age and

Defendant "is an employer within the meaning of the [ADEA]." [ECF No. 1-6]. After

conducting its investigation, however, the EEOC determined that Plaintiff did not have a viable

ADEA claim because Plaintiff had "accepted and signed" the Release, which included "monies

and benefits" Plaintiff would not normally have received. [ECF No. 1-7].

On November 16, 2019, Plaintiff filed his complaint. [Compl.]. Defendant moved to

dismiss the complaint on January 29, 2020. [ECF No. 9]. Plaintiff opposed the motion, [ECF

No. 11], and Defendant replied to the opposition, [ECF No. 14].

## II.     LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff.  See Gilbert v. City of Chicopee, 915 F.3d 74, 80 (1st Cir. 2019) (citations omitted).  "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Centro Médico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)).  The alleged facts must be sufficient to "state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.

"To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability."  Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Id. at 44 (quoting Iqbal, 556 U.S. at 679).  "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible . . . ."  Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14 (1st Cir. 2011)).  "The plausibility standard invites a two-step pavane."  A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (citing Grajales, 682 F.3d at 45).  First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)."  Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir.

2012)).  Secondly, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'"  Id. (quoting Morales-Cruz, 676 F.3d at 224).

## III.    DISCUSSION

In Count I of the complaint, Plaintiff alleges that Defendant "materially interfered" with Plaintiff's right to have forty-five days to review the Release because Defendant stated "it would accept the signed agreement only 6 days after having provided it to the plaintiff."  [Compl. ¶ 39]. Further, Plaintiff claims that the Release is invalid as to any potential ADEA claims because there was "no additional consideration . . . provided to employees who were 40 years of age or older," and the Plaintiff "did not knowingly and voluntarily waive his rights under the ADEA when he signed [the Release]."  [Id. ¶¶ 37, 40].  In Count II, Plaintiff alleges that these same deficiencies support an age discrimination claim under Massachusetts General Laws Chapter 151B.  [Id. ¶ 42].

### A.    Plaintiff's ADEA Claim

"The ADEA makes it unlawful for an employer 'to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'"  Velez v. Thermo King de P.R., Inc., 585 F.3d 441, 446 (1st Cir. 2009) (quoting 29 U.S.C. § 623(a)(1)).  "An employee 'may not waive' an ADEA claim unless the waiver or release satisfies the" requirements of the Older Workers Benefit Protection Act ("OWBPA").  Oubre v. Entergy Operations, 522 U.S. 422, 426–27 (1998).  The OWBPA is a provision within the ADEA that Congress enacted to clarify the standard for a "knowing and voluntary" release of an ADEA claim.  See id.; Am. Airlines v. Cardoza-Rodriguez, 133 F.3d 111, 117 (1st Cir. 1998).

The statute contains a list of minimum information that an ADEA waiver or release must contain for the waiver to be valid.  See Oubre, 522 U.S. at 426; ONeill v. N.Y. Times Co., No. 02-cv-11785, 2004 U.S. Dist. LEXIS 12831, at *12 (D. Mass. May 7, 2004). The OWBPA provides (in relevant part):

> An individual may not waive any right or claim under this Act unless the waiver is knowing and voluntary. . . .  [A] waiver may not be considered knowing and voluntary unless at a minimum—
> . . .
> (D) the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled;
> (E) the individual is advised in writing to consult with an attorney prior to executing the agreement;
> (F)
> . . .
>> (ii) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the individual is given a period of at least 45 days within which to consider the agreement;
> . . .
> (H) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the employer . . . informs the individual in writing in a manner calculated to be understood by the average individual eligible to participate, as to—
>> (i) any class, unit, or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such program; and
>> (ii) the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program.

29 U.S.C. § 626(f).

The Release at issue here states that "[plaintiff has] been given the opportunity to take at least forty-five (45) days to consider whether to sign this [Release]." [Release at 5].  In addition, the Release advised Plaintiff that he should sign and return the Release "on or after November 1, 2018 but no later than December 17, 2018." [Id. at 7 (emphasis omitted)].  Plaintiff says he received the Release on or about October 25, 2018 and that he signed and returned the Release

on November 27, 2018.  [Compl. ¶¶ 15, 18; Release at 7].  Even if Defendant told Plaintiff that it *would* accept the Release within six days, [Compl. ¶ 39], by the terms of the Release and Plaintiff's own conduct, he was given the required time under the OWBPA to review the Release and did not, in fact, sign or return the Release within six days.  See [Compl. ¶¶ 15, 18; Release at 7].  As the language of the Release was clearly consistent with the OWBPA requirement that a terminated employee have forty-five days to consider a waiver or release, Plaintiff has failed to plausibly allege a claim for relief on this basis.  See Twombly, 550 U.S. at 570; Bryant v. Liberty Mut. Grp., Inc., No. 11-cv-00217, 2013 U.S. Dist. LEXIS 76713, *13 (D.N.H. May 31, 2013) (finding a severance agreement "plainly drafted" with the OWBPA in mind was valid).

Next, Plaintiff contends that Defendant should have provided him with additional consideration for waiving his right to make an ADEA claim.  [ECF No. 11 ¶ 31].  EEOC regulations, however, clearly reject this assertion: "An employer is not required to give a person age 40 or older a greater amount of consideration than is given to a person under the age of 40, solely because of that person's membership in the protected class under the ADEA."  29 C.F.R. § 1625.22(d)(4).  Thus, the ten weeks of severance benefits offered by Defendant, even if same amount was offered to other terminated employees who were under age 40, was sufficient consideration in exchange for Plaintiff waiving all rights set forth in the Release, including his right to a claim under the ADEA.  See id.; Rivera-Flores v. Bristol-Myers Squibb Caribbean, 112 F.3d 9, 11 (1st Cir. 1997) (noting that courts commonly uphold releases of claims in exchange for benefits by members of protected classes).  Plaintiff has therefore failed to demonstrate that this alleged deficiency states a claim upon which relief can be granted.  See Twombly, 550 U.S. at 570.

Finally, Plaintiff argues that his execution of the Release was not "knowing and voluntary" under OWBPA standards.  [Compl. ¶ 37].  Specifically, Plaintiff alleges that the List provided with the Release did not provide him with sufficient information to allow him to determine whether he may have had a valid ADEA claim.  [ECF No. 11 at 6].  To determine whether a plaintiff's waiver was "knowing and voluntary," courts must conduct a two-pronged analysis to assess (1) whether a waiver or release complied with OWBPA statutory requirements and (2) whether a waiver or release was "knowing and voluntary" under federal common law.  Geoffroy v. Town of Winchendon, No. 19-1573, 2020 U.S. App. LEXIS 15364, *12–13 (1st Cir. Mar. 13, 2020); see also Eswarappa v. SHED Inc., 685 F. Supp. 2d 229, 235–36 (D. Mass. 2010).

1.   OWBPA Compliance

Under the OWBPA, employers are required to provide employees who are part of a termination program with a list of the "job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program."  29 U.S.C. § 626(f)(1)(H)(ii).

> When identifying the scope of . . . the 'job classification or organizational unit,' an employer should consider its organizational structure and decision-making process. A 'decisional unit' is that portion of the employer's organizational structure from which the employer chose the persons who would be offered consideration for the signing of a waiver and those who would not be offered consideration for the signing of a waiver.

29 C.F.R. § 1625.22(f)(3)(i)(B).  "The purpose of these provisions is clear.  They are intended to 'permit older workers,' who might otherwise 'have no information at all regarding the scope of the . . . program or its eligibility criteria . . . to determine whether the program gives rise to a valid claim under the ADEA.'"  Commonwealth v. Bull HN Info. Sys., 143 F. Supp. 2d 134, 147 (D. Mass. 2001) (quoting S. Rep. No. 101-263, at 32 (1990), reprinted in part in 1990

U.S.C.C.A.N. 1509, 1537–38); see also ONeill, 2004 U.S. Dist. LEXIS 12831, at *19 (explaining that lists provided under the OWBPA must give a plaintiff sufficient information to alert them to a potential claim for discrimination).  Employers are given broad discretion to decide which individuals to include in the "decisional unit," and thus the regulations suggest using a case-by-case approach to determine whether an employee was provided with adequate information to alert them to a potential ADEA claim.  See 29 C.F.R. § 1625.22 ("When identifying the population of the decisional unit, the employer acts on a case-by-case basis, and thus the determination of the appropriate class, unit, or group, and job classification or organizational unit for purposes of section 7(f)(1)(H) of the ADEA also must be made on a case-by-case basis."); see also Raczak v. Ameritech Corp., 103 F.3d 1257, 1262 (6th Cir. 1997) ("[T]he terms 'job title,' 'job classification,' and 'organizational unit' should be interpreted on a case-by-case basis . . . rather than as a dogmatic exercise in definition.").  In addition, the OWBPA requires the employer's disclosure to be written in such a way that it may be "understood by the average individual."  See Bull HN Info. Sys., 143 F. Supp. 2d at 146–47 (quoting 29 U.S.C. § 626(f)(1)(H)).

In ONeill v. N.Y. Times, Co., the plaintiff alleged that he did not knowingly and voluntarily waive his right to an ADEA claim because the decisional unit included in the list provided by his employer was inaccurate.  See 2004 U.S. Dist. LEXIS 12831, at *6 (noting that some employees initially considered for the termination program were excluded from the disclosure list provided by the employer).  The court rejected this argument because the OWBPA only requires employers to disclose a minimum amount of information—job titles and ages—that would be necessary for an employee to discern a potential ADEA claim.  Id. at *15 ("Knowledge that certain other persons of a similar age were removed from the program would not give

Plaintiff any additional notice of a potential age discrimination claim."); see also 29 U.S.C. § 626(f)(1)(H)(ii).  Regardless of whether additional information could be helpful to an employee in certain circumstances, an employer is not required to provide information beyond what is required under 29 U.S.C. § 626(f)(1)(H).

Plaintiff claims that the List provided by Defendant was insufficient because it was a "general list" of employees eligible for termination that did not also specify which of those employees were within his "work group."  [ECF No. 11 at 6].  As a result, Plaintiff argues, it was not "readily apparent" to him that he may have an ADEA claim and therefore his release was not knowing and voluntary.  [Id.].  Defendant maintains that the List contained all of the information required under the OWBPA for Plaintiff to knowingly and voluntarily waive his ADEA rights.  [ECF No. 10 at 7].  In considering the OWBPA's requirements for these types of disclosure lists and the information contained in the List provided to Plaintiff, the Court finds that the List provided by Defendant was sufficient.  Not only did the List contain the job titles and ages of all employees eligible for termination and indicate which employees were actually terminated, but it was also "written in a manner calculated to be understood by" Plaintiff, "or by the average individual eligible to participate."  29 U.S.C. § 626(f)(1)(A); see [Release at 8–14].  Although more information pertaining to Plaintiff's work group may have been helpful, disclosure at a level of specificity beyond the basic requirements of the OWBPA is not required.  See 29 U.S.C. § 626(f)(1)(H); ONeill, 2004 U.S. Dist. LEXIS 12831, at *15.  Thus, the List complied with OWBPA requirements and was sufficient to give Plaintiff an opportunity to knowingly and voluntarily assent to the release agreement.

2.      Federal Common Law

Next courts must determine whether, under federal common law, a release was made

knowingly and voluntarily, using a non-exhaustive list of factors, including:

> (1) plaintiff's education and business experience; (2) the respective roles of the
> employer and employee in the determining the provisions of the waiver; (3) the
> clarity of the agreement; (4) the time plaintiff had to study the agreement;
> (5) whether plaintiff had independent advice, such as that of counsel; and (6) the
> consideration for the waiver.

Geoffroy, 2020 U.S. App. LEXIS 15364, at *13 (quoting Melanson v. Browning-Ferris Indus.,

Inc., 281 F.3d 272, 276 & n.4 (1st Cir. 2002)); see Rivera-Flores, 112 F.3d at 12 n.4 (discussing

factors in the context of waiver of ADA claims).  Because none of these factors are dispositive,

courts balance them to determine whether, overall, a plaintiff's particular circumstances allowed

for a knowing and voluntary waiver.  See Geoffroy, 2020 U.S. App. LEXIS 15364, at *13; see

also Melanson, 281 F.3d at 276 (discussing factors in context of waiver of Title VII claims);

Keigney-Rodriguez v. President & Fellows of Harvard Coll., No. 17-cv-10501, 2017 U.S. Dist.

LEXIS 124209, at *10 (D. Mass. Aug. 7, 2017) (discussing factors in context of waiver of ADA

claims).

Plaintiff contends that there is insufficient information at the motion to dismiss stage

regarding his education, business sophistication, and background to properly assess the totality of

the circumstances surrounding his waiver.  [ECF No. 11 ¶¶ 27, 28].  Presumably, such

background information would support Plaintiff's claim that the List was "deceptive" because "it

was not readily apparent" to him that most of the terminated employees were over forty years

old.  [ECF No. 11 at 6].  Additional facts about the Plaintiff's background, however, are not

necessary to reach a conclusion under a totality of the circumstances analysis at this stage.  See

Geoffroy, 2020 U.S. App. LEXIS 15364, at *13 (stating "[n]o single factor is dispositive or

necessary" (citing Melanson, 281 F.3d at 274, 276)); De Jesus Montalvo v. Merck Sharp &

Dohme (IA), Inc., No. 11-cv-01545, 2012 U.S. Dist. LEXIS 86650, at *11–12 (D.P.R. June 22, 2012); Keigney-Rodriguez, 2017 U.S. Dist. LEXIS 124209, at *10.

First, the Release expressly notified Plaintiff that he "had [the] opportunity" and was advised to "consult with an attorney of [his] choice" before signing the agreement. [Release at 5]. Further, by signing the Release, Plaintiff acknowledged that he "freely and voluntarily entered into [the Release] without any threat, coercion, or intimidation." [Id.].[1] Even if Plaintiff were uneducated or lacked business acumen, "[t]he language in the release . . . is well within a lay person's comprehension." Melanson, 281 F.3d at 277. As to the additional factors, although Defendant drafted the Release, Plaintiff was given time to consider its terms and to consult with an attorney if he wished. [Release at 5–7]. Plaintiff accepted ten weeks of severance benefits as consideration for his release of any ADEA claims. [Id. at 2]. As noted above, the language of the Release was clear as to the terms of the claims being released and Plaintiff's options, and the List was clear with regard to the information that was included and the factors used to determine which employees would be eligible for termination. See generally [id.]. Thus, an examination of the relevant factors set forth in Geoffroy supports the conclusion that the release was made knowingly and voluntarily. See 837 F.3d at 77; Melanson, 281 F.3d at 276 ("[N]o single fact or circumstance[] is entitled to talismanic significance on the question of waiver." (citation omitted)); see also O'Shea, 837 F.3d at 78 (granting motion to dismiss on basis that totality of circumstances did not suggest plaintiff was misled in waiving ERISA claim); Keigney-

---

[1] Plaintiff claims that he suffered "economic duress in connection with his decision to sign" the Release, but this conclusory allegation is not supported by sufficient facts or detail for the Court to give it credence. [Compl. ¶¶ 22, 38]. At best, the Court understands this to mean that Plaintiff signed the Release in order to begin receiving severance funds because he was no longer receiving a salary. Even if this was sufficient to support a claim of duress, Plaintiff's actions in ratifying the Release void such a claim. See infra Section III.A.3.

Rodriguez, 2017 U.S. Dist. LEXIS 124209, at *10 ("An examination of the relevant factors set forth in O'Shea supports the conclusion that the release was made knowingly and voluntarily: the release of claims was clear, Plaintiff was given 21 days to review the agreement, Plaintiff was encouraged to meet with counsel, and Plaintiff was paid consideration.").  As a result, Plaintiff has failed to state a claim upon which relief may be granted.  See Twombly, 550 U.S. at 570.

3.     Ratification of Release

Alternatively, even if the Court were to conclude that Plaintiff's ADEA waiver was not knowing and voluntary, [Compl. ¶ 37], those claims would still be barred because his subsequent conduct ratified the Release.  Though a release that was induced by duress is voidable, S. Bay Bos. Mgmt. v. Unite Here, Local 26, 587 F.3d 35, 41 (1st Cir. 2009), a person claiming duress may ratify an otherwise voidable release by his subsequent conduct, Deren v. Digital Equip. Corp., 61 F.3d 1, 2–3 (1st Cir. 1995).  Thus, a plaintiff claiming duress must act promptly to repudiate the release or he will be deemed to have waived his right to do so.  S. Bay Bos. Mgmt., 587 F.3d at 41.  Alternatively, a plaintiff may ratify an otherwise voidable release by accepting the benefits under the agreement and a later complaint may be dismissed if a plaintiff has waived his or her asserted claims through such ratification.  Deren, 61 F.3d at 2–3.

Plaintiff signed the separation agreement on November 27, 2018, [Compl. ¶ 18], and filed his EEOC claim on February 4, 2019, [id. ¶ 23].  He does not contest that he received the benefits conferred under the Release.  Similar to the plaintiff in Keigney-Rodriguez v. President & Fellows of Harvard College, Plaintiff here accepted the benefits under the agreement and then waited several months before making his claim.  See 2017 U.S. Dist. LEXIS 124209, at *12 ("By accepting the benefits of the release and waiting nine months before making her claim, [plaintiff] ratified the agreement." (alteration in original) (quoting Hartlage v. Town of Cohasset,

744 N.E.2d 683, 683 (Mass. Ct. App. 2001)); <u>see also</u> <u>Geoffroy</u>, 2020 U.S. App. LEXIS 15364, at *13 (noting that plaintiff waited six months after signing release before filing complaint with MCAD).  Thus, Plaintiff ratified the Release and waived his right to pursue an ADEA claim against Defendant by accepting the benefits of his bargain.  <u>See</u> <u>Deren</u>, 61 F.3d at 2 ("A contract signed under duress is voidable, but not automatically void.  By accepting the funds and failing to seek a remedy based on duress within a reasonable period of time . . . , the plaintiffs forfeited any entitlement to relief on this basis." (quoting <u>Vasapolli v. Rostoff</u>, 39 F.3d 27, 35 n.5 (1st Cir. 1994))); <u>In re Bos. Shipyard Corp.</u>, 886 F.2d 451, 455 (1st Cir. 1989) (holding that "one seeking to repudiate an agreement allegedly entered into under duress must promptly complain of the circumstances under which the document was signed").

In sum, Plaintiff was in a position to knowingly and voluntarily assent to his release of any ADEA claims against Defendant because the Release he executed and the List he was provided were sufficient under OWBPA, 29 U.S.C. § 626(f)(1)(H), and the totality of the circumstances did not prevent Plaintiff from a making a knowing and voluntary waiver under federal common law.  Further, even if Plaintiff's waiver was not knowing and voluntary, his subsequent conduct—accepting the severance and benefits from Defendant—ratified the agreement.

### B.      Section 151B Claim

Having determined that Plaintiff's federal claim must be dismissed for failure to state a claim, the Court exercises its discretion and elects not to consider Plaintiff's supplemental state-law claim, which arises under Massachusetts General Laws Chapter 151B.  Under 28 U.S.C. § 1367(c), "[a] district court 'may decline to exercise supplemental jurisdiction' if the court 'has dismissed all claims over which it has original jurisdiction.'"  <u>Eves v. LePage</u>, 842

F.3d 133, 146 (1st Cir. 2016) (quoting 28 U.S.C. § 1367(c)(3)), <u>vacated in part and reinstated in part by</u> 927 F.3d 575, 589 (1st Cir. 2019) (reinstating opinion as to dismissal of state-law claims).  "The Supreme Court has made pellucid 'that in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'"  <u>Rivera-Díaz v. Humana Ins. of P.R., Inc.</u>, 748 F.3d 387, 392 (1st Cir. 2014) (quoting <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7 (1988)).

Plaintiff has not argued that this is an unusual case and, as to the state-law claim alleged against Defendant, the Court does not find unusual circumstances that would counsel against declining to exercise jurisdiction over the remaining state-law claims.  As a matter of judicial efficiency, the Court therefore dismisses Plaintiff's remaining state-law claim.  <u>See</u> <u>Rojas-Velàzquez v. Figueroa-Sancha</u>, 676 F.3d 206, 213 (1st Cir. 2012) ("Because the only federal claims in this suit were properly dismissed, the court's decision not to exercise supplemental jurisdiction over the pendent claims cannot seriously be questioned." (citation omitted)); <u>Pagliarini v. Gen. Instrument Corp.</u>, 855 F. Supp. 459, 464 (D. Mass. 1994) ("Having disposed of plaintiff's ADEA claim, it is appropriate that I dismiss the pendent state discrimination claim for want of subject matter jurisdiction.").

## IV.  CONCLUSION

Accordingly, for the reasons set forth herein, Defendant's motion to dismiss, [ECF No. 9], is <u>GRANTED</u>.

**SO ORDERED.**

June 11, 2020                                                            /s/ Allison D. Burroughs
                                                                         ALLISON D. BURROUGHS
                                                                         U.S. DISTRICT JUDGE